ANKNEY, Admr., et al., Appellees,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant.

[Cite as *Ankney v. Nationwide Mut. Ins. Co.* (1992), 79 Ohio App.3d 555.]

Court of Appeals of Ohio,
Defiance County.

No. 4–91–19.

Decided May 14, 1992.

*Joseph W. O'Neil,* for appellees.

*John W. Weaner,* for appellant.

*Per Curium.*

This is an appeal by defendant-appellant, Nationwide Mutual Insurance Company ("Nationwide") from a judgment of the Defiance County Common Pleas Court granting prejudgment interest to plaintiffs-appellees, James K. Ankney, administrator of the estate of James D. Ankney, James K. Ankney, Martin W. Ankney, Michael C. Ankney and Dylan Ankney (hereinafter collectively referred to as "appellees"). Nationwide submits the following assignment of error for our review:

"The trial court erred in awarding pre-judgment interest for the reason that it is against the manifest weight of the evidence and an abuse of discretion to hold that Plaintiffs–Appellees acted in good faith and that Defendant–Appel-

lant failed to act in good faith during settlement negotiations conducted relative to this cause."

On February 6, 1986 James D. Ankney, the appellees' eighteen-year-old son and brother, was involved in a collision while riding a motorcycle in California and ultimately died as a result of his injuries. Due to the tortfeasor's limited coverage, James K. Ankney and his three sons made a claim for uninsured/underinsured coverage under James K. Ankney's automobile liability policy with Nationwide. Nationwide denied coverage and refused to arbitrate the claim.

On December 29, 1988 appellees filed a "complaint for declaratory judgment and motion to force." Then, on May 1, 1989, they filed a motion for summary judgment as to the availability of coverage and the enforceability of an amended "non-binding" arbitration clause. On July 11, 1989 the trial court granted appellees' motion in all respects and ordered the matter to binding arbitration.[1]

Thereafter, based on the stipulated evidence submitted by the parties, the arbitration panel awarded $50,000 in damages to the decedent's estate on the survivorship action and $250,000 in damages to the members of the Ankney family, on the wrongful death claim. Days later, appellees filed their motion to reduce the arbitration award to judgment and a motion for prejudgment interest with notice of hearing.

At the August 14, 1991 hearing, the court noted that the parties had reached an agreement regarding reduction of the arbitration award to judgment,[2] and then counsel for both sides agreed to represent the factual background to the court, "so that it is as if we were sworn in and as if the evidence was being presented from the witness stand" as the evidentiary basis for the court's ruling on the prejudgment interest motion. At the conclusion of the hearing the court found that prejudgment interest was appropriate, based on the reduced award of $275,000, in the amount of $150,684.93.

R.C. 1343.03(C), the statute providing for prejudgment interest, states:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by

---

1. Coverage under the policy was found to be $500,000 per person and $1,000,000 per occurrence, with an offset representing funds received under the tortfeasor's policy.

2. By judgment entry dated August 14, 1991 the court found the award, with an offset of $25,000 for prior funds received, to be legal and proper in all respects and ordered said award approved and confirmed. The court then entered judgment "in accordance with the award in favor of Plaintiffs and against Defendant in the sum of $275,000, together with costs and interest from July 31, 1991."

agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

This statute was enacted to promote settlement efforts, to prevent frivolous delays, and to encourage good faith efforts to settle controversies before trial. *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 159, 25 OBR 201, 202, 495 N.E.2d 572, 574. The statute requires all parties to make an honest effort to settle a case. *Id.* A party may have "failed to make a good faith effort to settle" even when he has not acted in bad faith. *Id.*

■ The decision as to whether a party's settlement efforts indicate good faith is generally within the sound discretion of the trial court. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 19 OBR 123, 482 N.E.2d 1248. This court will not overturn a finding on this issue unless the trial court's actions indicate an abuse of discretion. *Kalain, supra,* 25 Ohio St.3d at 159, 25 OBR at 203, 495 N.E.2d at 574. "Abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable, and connotes more than just an error of law or judgment. *Cox v. Fisher Fazio Foods, Inc.* (1984), 13 Ohio App.3d 336, 13 OBR 414, 469 N.E.2d 1055.

■ In *Copp v. Clagg* (1990), 66 Ohio App.3d 211, 213, 583 N.E.2d 1086, 1087, we cited the following test, set forth in the syllabus of *Kalain, supra,* for use in determining if a party has failed to make a good faith effort to settle under R.C. 1343.03(C):

" 'A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not made a monetary settlement offer.' "

In the case *sub judice,* the trial court found that Nationwide failed to investigate the case for purposes of evaluating the risks and potential liability, and that it failed to make a good faith monetary settlement offer, or respond in good faith to either of the appellees' offers, even after stipulating liability.

After reviewing the entire record, including the "prejudgment interest hearing" transcript, we find no abuse of discretion on the part of the trial court in awarding prejudgment interest to appellees in this circumstance.

Although it is likely incomplete, the record reflects that Nationwide took very little interest in this action, supporting the court's finding that there was a failure to investigate the case for proper risk evaluation. Moreover, evidence adduced at the hearing shows that appellees made an initial offer of $450,000 and then, immediately before the arbitration proceeding, reduced their settlement offer to $300,000, coincidentally the exact same amount that the arbitration panel awarded.

It is clear that once the court granted summary judgment on the issue of coverage in favor of the appellees, some amount of damages were assured, as evidenced by the eventual stipulation of liability. Thus, Nationwide obviously did not have a "good faith, objectively reasonable belief that [it] had no liability." See *Kalain, supra.* However, notwithstanding the fact that approximately $27,000 in medical bills were incurred and that there was a report showing that the decedent's father suffered from permanent psychological debilitation, Nationwide refused the appellees' offers and still made no offer of its own.

At the hearing on the matter, the court and counsel for Nationwide had the following discussion:

"THE COURT: Even if the siblings aren't involved, you got a claim that you've got no defense to. By your own acknowledgment, there is some value and there is no offer at all.

"[Counsel]: Because we were in the 75 to 150,000 and they wouldn't consider anything at all.

"THE COURT: But you didn't make an offer in the 75 to 150,000 range.

"[Counsel]: Well, that's true but I'm not sure that—

"THE COURT: Or 10 to $25,000 range.

"[Counsel]: Well, uh, are you saying that we have to make an offer, that's so low that we know they're not going to accept it? I, I, I guess that seems futile to us. That's why nothing was made."

Although we do not necessarily agree with appellees' sweeping proposition that "no offer is no effort," the fact that Nationwide made neither an offer nor a counteroffer, particularly once liability had been established, and made little investigation into the case, leads us to conclude that the trial court did not act in an unreasonable, arbitrary or unconscionable manner by finding that Nationwide failed to at least make a good faith effort to settle and that the appellees did make a good faith effort to settle the matter.

■ Finally, we now turn to Nationwide's comment, in the last paragraph of its brief, questioning with no argument or authority, the application of R.C.

1343.03(C) to this type of case, where one is suing his own insurance company under a binding arbitration order.

Although this argument was not raised in the trial court in any pleading or proceeding of record and was apparently not set forth supporting an assignment of error, we find the issue worthy of comment due to its significance and the arguable split of authority on the issue.

In a line of cases where the insured had an uninsured/underinsured claim resolved by arbitration but the matter was settled by the parties or payment had been accepted, *before the award was confirmed and reduced to judgment,* courts have made broad conclusions that R.C. 1343.03(C) is not applicable to awards reached as a result of arbitration.

"The uninsured motorist coverage arbitration process through which appellant was compensated for the tortious conduct of a third party is not a 'civil action based on tortious conduct' within the proper meaning of the statute. Rather, the arbitration process is a contractually based dispute resolution mechanism through which an insurer and its insured agree to settle their differences on damages caused by the tortious conduct of a third party." *Luby v. Safeco Ins. Co.* (Oct. 29, 1987), Cuyahoga App. No. 52874, unreported, 1987 WL 19250. See, also, *Griffith v. Buckeye Union Ins. Co.* (Sept. 29, 1987), Franklin App. No. 86AP–1063, unreported, 1987 WL 17805; and *Barker v. Lightning Rod Mut. Ins. Co.* (Apr. 4, 1991), Franklin App. No. 90AP–1406, unreported, 1991 WL 47418, citing *Vanderhoof v. Gen. Acc. Ins. Group* (1987), 39 Ohio App.3d 91, 529 N.E.2d 953.

While, in *Evans v. Buckeye Union Ins. Co.* (Mar. 5, 1990), Mahoning App. No. 88 C.A. 196, unreported, 1990 WL 25051 (cf. *Davidson v. Higgins* [Mar. 31, 1992], Mahoning App. No. 90 C.A. 207, unreported, 1992 WL 73590) the court distinguished the foregoing cases and then held that prejudgment interest could be awarded under R.C. 1343.03(C) *where an arbitration award had been reduced to judgment.*

" * * * [T]he prejudgment interest statute seeks to prevent a party from receiving a benefit where that party fails to make a good faith effort to resolve the matter. * * * Obviously, this purpose is not served if a provision to arbitrate renders the statute inapplicable.

"We find that the proceedings involved in this case, the reduction of the arbitration award to judgment, the levy and execution on personal property, the motion and hearing for prejudgment interest, all combine to fall within the civil action definition of R.C. 2307.01." *Evans, supra.*

In the case *sub judice,* as the arbitration award had been reduced to judgment, we are inclined to follow and approve the rational of the *Evans*

ruling. Instead of having the matter heard by a court or jury, Nationwide chose to include an arbitration provision into its contract and the insured likely had little input into this decision. If the legislature saw a need to promote settlement efforts and prevent frivolous delays, the only proper implementation of this purpose is to have R.C. 1343.03(C) applicable to arbitration awards that have been reduced to judgment.

Therefore, as we find no abuse of discretion in the trial court's ruling that granted the appellees prejudgment interest, Nationwide's single assignment of error is overruled and the judgment of the Defiance County Common Pleas Court is affirmed.

*Judgment affirmed.*

HADLEY, P.J., SHAW and THOMAS F. BRYANT, JJ., concur.